212 So.2d 598

**SOUTHEASTERN SAND & GRAVEL COMPANY**

v.

**NEWELL ROADBUILDERS, INC.**

**3 Div. 201.**

Supreme Court of Alabama.

June 20, 1968.

T. B. Hill and Hill, Hill, Stovall & Carter, Montgomery, and Frank H. McFadden and Bradley, Arant, Rose & White, Birmingham, for appellant.

Crenshaw &. Waller, Montgomery, for appellee.

LAWSON, Justice.

This is a declaratory judgment proceeding instituted in the Circuit Court of Montgomery County, in Equity, on December 22, 1964, by Newell Roadbuilders, Inc., sometimes hereinafter referred to as Newell, against Southeastern Sand & Gravel Company, a division of Blount Brothers Corporation, sometimes hereinafter referred to as Southeastern.

In February of 1964 Newell was engaged in the business of constructing roads and submitted a bid to the Highway Department of the State of Alabama for the construction of a part of Interstate Highway No. 65 in Baldwin County. In its bid Newell used prices submitted to it by Southeastern on certain road materials.

Newell was the low bidder and was awarded a contract by the Highway Department.

Following the awarding of the contract to Newell for the construction of the road in Baldwin County, there were negotiations between it and Southeastern relative to the road materials on which Southeastern had furnished prices to Newell.

Southeastern took the position that the parties had entered into a binding contract on February 7, 1964, the date of the letting, which had been modified on March

18, 1964, as to prices of the materials to be furnished by it to Newell. Newell contended that there was no binding contract between it and Southeastern.

Because of this disagreement, Newell instituted this proceeding wherein it prayed, in effect, that the court decree that "the parties had no mutually binding contract."

Southeastern interposed a demurrer to the complaint, which was overruled.

Thereafter Southeastern filed an answer, which it made a cross bill against Newell and against Newell Brothers, a partnership, composed of Harold Newell, Durwood Newell, Marilyn Newell and Louise Newell.

The reasons for bringing Newell Brothers, the partnership, into the litigation are set forth in Paragraph 13(a) of the answer-cross bill, which reads:

"Respondent is informed and believes and upon such information and belief avers the fact to be that in making its said bid to the State of Alabama complainant [Newell Roadbuilders, Inc.] acted as a joint-venturer with Newell Brothers, a partnership * * *, that the oral contract which was entered into by complainant with respondent on, to-wit, February 7, 1964, was made by complainant on its own behalf and on behalf of the said partnership; and that the said partnership and partners are necessary and proper parties to this proceeding."

The prayer of the cross bill reads:

"14. And respondent prays that upon a hearing of this cause the court will enter a decree declaring that the said contract between complainant and respondent, as set forth in paragraph 12(c) hereof is in full force and effect and constitutes a valid and binding contract between the respondent and complainant and the said Newell Brothers, a partnership."

The complainant filed answer to the cross bill.

The partnership appeared and became parties to the action. However, it will not be necessary to make further reference to the partnership or its members.

The cause was tried before the court without a jury, the witnesses testifying orally before the court.

The trial court rendered a decree declaring that no contract existed between the parties.

From that decree Southeastern has appealed to this court.

Southeastern, the appellant, argues its assignment of error to the effect that the trial court erred in overruling its demurrer which reads as follows:

"Comes now the respondent and demurs to complainant's Bill of Complaint, and to each phase thereof, separately and severally, upon the following grounds, separately and severally assigned:

"1. It does not set forth a justiciable controversy.

"2. It does not allege a controversy cognizable in equity.

"3. It seeks declaration of a controversy presenting purely legal as opposed to equitable issues.

"4. There is no equity in the bill."

A general demurrer is available in equity practice. Rule 14, Equity Practice, Title 7, Appendix, Code; Wolff v. Woodruff, 258 Ala. 1, 61 So.2d 69.

In its brief Southeastern says: "Respondent's demurrer was based on the proposition that the complaint did not allege a controversy cognizable in equity, but sought the declaration of a controversy presenting purely legal as opposed to equitable issues."

In support of its contention that the trial court erred in overruling its demurrer,

Southeastern relies upon our holdings in Love v. Rennie, 254 Ala. 382, 48 So.2d 458, and in Wolff v. Woodruff, supra.

In the Love Case, supra, the complainant sought by the filing of a petition for a declaratory judgment on the equity side of the court, to usurp the jurisdiction of the probate court in regard to the probating of a will. We have no such situation in this case and consequently the holding in the Love Case, supra, is not here applicable.

In the opinion in the Woodruff Case, supra, we observed, among other things, that the Declaratory Judgments Act was not intended to confer upon a court of equity, jurisdiction of a subject matter which it had not possessed theretofore (Love v. Rennie, supra, was cited in support of that statement.); that under the Declaratory Judgments Act the procedure may be had in equity, provided the relief sought to enforce an equitable power, although there may be an adequate remedy at law also, but not if the matter is not of equitable cognizance, citing in support of the latter observation Tuscaloosa County v. Shamblin, 233 Ala. 6, 169 So. 234; Berman v. Wreck-A-Pair Building Co., 236 Ala. 301, 182 So. 54; Love v. Rennie, supra.

The allegations of the bill for declaratory judgment in the Wolff Case, supra, and the relief sought are in no wise similar to the allegations of the bill presently under review or to the relief prayed for in the instant bill. Consequently, we do not think the aforementioned observations from the Wolff Case, supra, should be held to be controlling here in view of our holding in Louisville Fire & Marine Ins. Co. v. St. Paul Fire & Marine Ins. Co., 252 Ala. 532, 41 So.2d 585.

In that case the bill praying for a declaratory judgment or decree was filed in the Circuit Court of Winston County, in Equity, by St. Paul Fire & Marine Insurance Company against Louisville Fire & Marine Insurance Company and one W. O. Johnson. Johnson had sustained a loss by fire and a controversy arose between the two insurance companies as to whether Johnson's loss should be paid in full by the respondent insurance company or whether the complainant insurance company should pay one half of the agreed loss. The real controversy between the two insurance companies was as to whether or not at the time Johnson sustained his fire loss he was covered by a fire insurance policy of the complainant insurance company. If such a policy was in existence, then the two insurance companies under the terms of their policies would each bear one half of the loss. On the other hand, if the complainant's policy was not in existence at the time Johnson sustained his loss, then the respondent insurance company had to pay the full loss sustained by Johnson, which was agreed to be $2,500.

We have gone to the original record in the case of Louisville Fire & Marine Ins. Co. v. St. Paul Fire & Marine Ins. Co., supra, and find that the prayer of the bill filed by St. Paul Fire and Marine Insurance Company reads in pertinent parts as follows:

"* * * that this court shall order, adjudge and decree that this is a proper cause for an action for declaratory judgment and that there is a bona fide, legal controversy between the parties to the cause as to their legal rights, status and liability, and that this court should take jurisdiction of this cause and ascertain and determine whether or not the policy provided by complainant was in full force and effect at the time of the fire, and whether or not it is bound to pay any sum, or contribute to said loss sustained by W. O. Johnson, and whether or not the respondent Louisville Fire & Marine Insurance Company is bound to pay the whole of said loss, or merely a pro rata part of said loss."

In essence, the complainant prayed that the court determine whether or not at the time of the fire there was in existence a contract of insurance issued by St. Paul

Fire & Marine Insurance Company covering the property of Johnson destroyed by the fire.

We have ascertained from the original record that the respondent, Louisville Fire & Marine Insurance Company, interposed a demurrer to the bill which contained among others, the following grounds:

"1. There is no equity in said bill.

"3. The relief sought is available only in a common law court. Complainant seeks a declaration upon a purely legal rather than an equitable matter.

"4. The matters and things set up in the bill are not cognizable in a court of equity.

"5. The allegations of said bill do not present a justiciable controversy."

The grounds of the demurrer set out above raised the same points as do the grounds of the demurrer interposed in the instant case by Southeastern.

The trial court in the St. Paul Case overruled the demurrer. From that decree the respondent, Louisville Fire & Marine Insurance Company, appealed to this court.

Our opinion affirming the decree from which the appeal was taken concludes as follows:

"The appellant insists that on the facts alleged, the complainant has a complete and adequate remedy at law and that the bill does not show a justiciable controversy between the parties, sufficient to sustain the jurisdiction of the court and that, therefore, the bill was without equity.

"We are not of opinion that this contention can be sustained and hold that a justiciable controversy is shown and that the decree overruling the demurrer is free from error."

In response to an application for rehearing, we inadvertently said in effect that the bill filed by St. Paul alleged that "the

policies of the two insurance companies were in force at the date of the destruction of Johnson's property, * * *" That statement was incorrect, as was pointed out in the opinion in the case of St. Paul Fire & Marine Ins. Co. v. Johnson et al., 256 Ala. 690, 57 So.2d 80, which was an appeal from the final decree rendered in the same cause. However, we said that the incorrect "statement did not affect the correctness of the conclusion reached."

In view of our holdings in St. Paul Fire & Marine Ins. Co. v. Louisville Fire & Marine Ins. Co., supra, and St. Paul Fire & Marine Ins. Co. v. Johnson et al., supra, we conclude that the trial court did not err in overruling the demurrer interposed by Southeastern to the bill filed against it by Newell.

Although it does not deal with the question as to whether or not the declaratory judgment proceeding should be filed on the law side or the equity side of the court, we call attention to the holding of the Supreme Court of Missouri in the case of Temm v. Temm, 354 Mo. 814, 191 S.W.2d 629, to the effect that under the Uniform Declaratory Judgments Act a court is authorized to determine whether or not an oral contract exists between the parties to the litigation. See also Borchard, Declaratory Judgments, 2d Ed., pp. 501, 504; Howard v. Howard, 131 Cal.App.2d 308, 280 P.2d 802.

The other assignments of error argued by Southeastern are to the effect that the trial court, in view of the evidence, erred in rendering the final decree wherein it was declared: "* * * that the parties are neither one bound to the other by any binding contract for said paving on said Interstate Highway Project in Baldwin County, Alabama."

Although the bill filed by Newell did not so allege, the evidence shows without dispute that the prices submitted by Southeastern to Newell and used by Newell in the bid which it submitted to the State

Highway Department were not only for road material, but for the cost of doing the paving on the interstate road project involved.

The decree rendered by the trial court includes findings of fact, which in pertinent parts read as follows:

"The testimony is undisputed that the respondent, Southeastern Sand & Gravel Company, made an oral bid to the Complainant, Newell Roadbuilders, Inc., for doing of such paving and that the Complainant, Newell Roadbuilders, Inc., used said quoted price in formulating its bid to the State of Alabama. The evidence is further undisputed that, upon the opening of the bids by the State of Alabama, when it became apparent that the Complainant, Newell Roadbuilders, Inc., was the low bidder to the State of Alabama and would be awarded said Prime Contract, Harold Newell told the Respondent's Vice President, Barrie Harmon, that he had used Southeastern's prices and either 'it looks like we have got some work together' or 'we have to work together.' * * *

"However, the evidence is further undisputed that the parties had further negotiations thereafter. By a letter of March 18, 1964, Harmon wrote Newell, offering to reduce the 'quoted price' and in this letter interjected the question of what would be an appropriate time limit within which the Respondent would complete its portion of said project. Thereafter on several occasions Harmon asked Newell for a written contract. * * *

"The evidence is further undisputed that in September, Newell Roadbuilders, Inc., prepared and signed and forwarded to Harmon a written contract setting out the terms satisfactory to Complainant, Newell. * * * The officials of the Respondent, Southeastern Sand & Gravel Company, did not elect to sign said proposed written contract, and some sixty (60) days later the Complainant withdrew its offer to enter into said written contract."

We have carefully reviewed the evidence in this rather voluminous record and are clear to the conclusion that it fully supports the findings of the trial court quoted above.

In the second quoted paragraph of the court's decree reference is made to a letter written by Southeastern's Vice President, Barrie Harmon, on March 18, 1964. The letter of March 18th was addressed to Newell Roadbuilders, Inc., but was actually for the attention and consideration of Mr. Harold Newell. It reads:

"Dear Harold:

"As per our recent conversation, we are willing to reduce our quoted price for the paving items on the above referenced job by $20,000.00. This is to be accomplished by reducing our price on the 41,215 tons of binder course by $.48½ per ton. *We feel we can make this reduction anticipating the project will be ready for paving by the 1st of June, 1965 and being able to complete paving operations during the calendar year 1965.* [Emphasis supplied]

"Yours very truly,

SOUTHEASTERN SAND & GRAVEL COMPANY

/s/ Barrie H. Harmon
Barrie H. Harmon
Vice President"

It appears from the evidence that the letter of March 18, 1964, came about as a result of a complaint which Harold Newell had made to Barrie Harmon relative to the prices which Southeastern had submitted to Newell, which prices Newell claimed were greatly in excess of prices which other subcontractors had submitted to other prime contractors bidding on the same job.

The last sentence of the letter of March 18, 1964, which we have italicized above, is

the first time in all of the negotiations between the parties wherein any reference was made as to the time when the paving operations should commence and end.

The evidence shows that Newell never did agree that the paving operations should begin and end at the time set out in the letter of March 18, 1964. On the contrary, on September 28, 1964, Harold Newell, on behalf of Newell Roadbuilders, Inc., wrote a letter to Barrie Harmon, c/o Southeastern Sand & Gravel Company, which reads in pertinent part as follows:

"Attached hereto you will find three copies of contract between Southeastern Sand & Gravel Company and Newell Roadbuilders, Inc. covering certain work on the above noted project to be sub-let to your company.

"Please sign all copies of the contract and return two copies to us for our file and information.

"We do not plan to set you up at the Highway Department as a sub-contractor at the present time due to the necessity of you send [sic] in Form 100 each week until the work starts."

The three copies of the contract which accompanied the letter were signed by Harold M. Newell on behalf of Newell Roadbuilders, Inc. The contract contained the following provision:

"7. It is the intent of this contract that the placing of pavement will not take more than 100 working days. The paving shall start within 30 days after notice from the Party of the First Part. Newell Roadbuilders, Inc. shall have three miles or more ready before expecting the pavement to start. The job shall be prosecuted by the contractors in order not to delay the other contractors."

This contract was received by Barrie Harmon, the Vice President of Southeastern, with whom Newell had been accustomed to dealing in matters of this kind. There are tendencies in the evidence to the effect that after some time had passed, a representative of Newell inquired of Harmon why Southeastern had not executed the contract submitted to it by Newell on September 28, 1964, and the evidence further tends to show that Harmon stated in effect that he did not think he had authority to execute the contract and that it had been turned over to a Mr. Mullins, who was his superior.

In any event, the evidence shows that neither Mullins nor any other official or representative of Southeastern executed the contract which had been submitted to Southeastern on September 28, 1964, prior to November 25, 1964, on which date Harold Newell, on behalf of Newell Roadbuilders, Inc., wrote the following letter to Barrie Harmon of Southeastern:

"Dear Sir:

"On September 25 we tendered to you a contract signed by us covering certain work on I-65 1 (35) 36 'A' Baldwin County.

"Approximatetly sixty (60) days has elapsed and you have yet to execute this contract in writing or bind yourself to this contract. Due to your failure to execute this contract by binding yourself in writing within a reasonable time you have put us in a position where we must protect ourselves by getting a firm commitment from another sub-contractor. We therefore formally withdraw our offer to enter into such contract with you and request that you return to us the said proposed contract.

"We cannot understand your unexplained delay in not signing the contract which has made it necessary to make other arrangements."

After Southeastern received Newell's letter of November 25, 1964, a representative of Southeastern signed the contract

**438**

which had been submitted to it on September 28, 1964.

■ We see no occasion to further delineate the evidence. Suffice it to say that in our opinion the evidence clearly shows that there was never a meeting of the minds of the parties as to all the essential elements involved in the contract and as to the respective rights and duties of the parties. Consequently, there was no binding contract. C. W. Cochran Lumber Co. v. Paterson & Edey Lumber Co., 202 Ala. 366, 80 So. 448.

We might point out that there is no contention made by Southeastern that the mere fact that Newell used the prices submitted to it by Southeastern in submitting its bid to the State Highway Department in any way bound Newell to use Southeastern's road materials or its services in the paving of the road in question. As we understand Southeastern's position, it is, in essence, that when a representative of Newell stated to Barrie Harmon, Southeastern's Vice President, on February 7, 1964, the day of the letting, that "It looks like we have got some work together" or "We will have to work together," that a binding contract then came into existence. Even if we were to concede, which we do not, that absent the further negotiations shown by this record, a binding contract was formed by the remarks or statements made by the representative of Newell on February 7, 1964, the fact remains that the subsequent negotiations and conduct of the parties clearly support the conclusion that neither party on February 7, 1964, considered that a binding oral contract came into existence on that date.

We are of the opinion that the decree of the trial court is due to be affirmed and it is so ordered.

Affirmed.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.