The plaintiff, Green Springs Associates, Ltd. ("Associates"), an Alabama limited *Page 873 
partnership, appeals from the judgment entered on the jury's verdict in favor of the defendants, Green Springs Village, Ltd. ("Village"), an Alabama limited partnership; Char-Ter Investments, an Alabama partnership; Security-Connecticut Life Insurance Company, Inc. ("Security-Connecticut"), a Connecticut corporation; Carter L. Cooper; Charles Grelier; and Cooper 
Grelier Companies, Inc. ("Cooper Grelier"), an Alabama corporation, in this action seeking to rescind a contract on the ground of fraud and to recover resulting damages, or, in the alternative, to recover damages for breach of contract. We reverse and remand.
In August 1987, Robert Morrow, the president of Real Estate Management, Inc. ("Real Estate Management"), and Hawkeye, Inc. ("Hawkeye"), two Alabama corporations involved in the development of commercial real estate, had discussions with David Young, a real estate broker affiliated with Cooper 
Grelier, which was owned by Carter L. Cooper and Charles Grelier and which was involved in the sale of commercial real estate, in which Morrow expressed an interest in purchasing a shopping center known as "The Village on Green Springs." At that time, the shopping center was owned by Village. Char-Ter Investments was the general partner in Village, and Security-Connecticut was a limited partner. Cooper and Grelier were general partners in Char-Ter Investments. Morrow and a business associate, Richard Reiben, the president of First Stratford Corporation, a New York corporation, were interested in the shopping center as a possible real estate syndication project. Negotiations later ensued between Morrow and Reiben, and Grelier and Young, who were acting on behalf of Village. During these negotiations, Young and Grelier were made aware that Morrow and Reiben were interested in the shopping center as a possible syndication project and that it was Morrow's intention to contract for the purchase of the shopping center on behalf of Real Estate Management and to then immediately assign all of Real Estate Management's rights under the contract to a limited partnership to be formed, which would take title to the shopping center directly from Village at the closing. Cooper and Grelier agreed to this arrangement. On October 18, 1987, an "Agreement for Purchase and Sale of Real Property" was executed by Cooper and Grelier, on behalf of Village, as the seller, and by Morrow, on behalf of Real Estate Management, as the purchaser. That contract, which recites a purchase price of $5,200,000, provides, in part, as follows:
 "6. Representations and Warranties of The Village. The Village represents and warrants as follows:
". . . .
 "(j) . . . Except as otherwise disclosed [herein], (i) each of the Leases [with the tenants in the shopping center] is in full force and effect, (ii) none of the parties to any of the Leases is in default under any of its obligations thereunder, and (iii) no event has occurred that, with the giving of notice or passage of time, or both, would constitute a default thereunder. All tenants under the Leases are either in possession of their respective premises and are conducting business pursuant to their respective Leases or are in the process of improving the leased premises. . . . Except as otherwise disclosed [herein], all rents under the Leases are being paid and are current and no tenant has paid any rent, fees or other charges for more than one month in advance.
 "(k) There are no lawsuits or other proceedings pending or, to Sellers knowledge, threatened regarding ownership, use or possession of the Property or any portion thereof, except as noted [herein].
". . . .
 "(q) No representation or warranty made by The Village in this Agreement, . . . or in any letter or certificate furnished to Buyer pursuant to the terms hereof, each of which is incorporated herein by reference and made a part hereof, contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements contained herein or therein not misleading." *Page 874 
On November 10, 1987, Associates was formed by Hawkeye, which, as previously noted, is an Alabama corporation, and First Stratford as the general partners, and Reiben as the limited partner.[1] Thereafter, Morrow, on behalf of Real Estate Management, purported to orally assign all of Real Estate Management's rights in the October 18, 1987, contract to Associates, and the sale of the shopping center was subsequently closed on December 17, 1987. At the closing, Village accepted the agreed-upon payment from, and conveyed title to the shopping center by warranty deed to, Associates. Among the various documents executed at the closing was the following "Certificate":
 "This certificate is made as of the 17th day of December, 1987, by Green Springs Village, Ltd. (hereinafter referred to as 'Seller'), an Alabama limited partnership which has as its sole general partner Char-Ter Investments, an Alabama general partnership, in favor of Green Springs Associates, Ltd., an Alabama limited partnership (hereinafter referred to as 'Purchaser').
 "Seller hereby reaffirms in all material respects for the benefit of Purchaser each and every representation and warranty contained in that certain Agreement [for] Purchase and Sale of Real Property ('Agreement'), dated October 18, 1987, by and between Seller and Purchaser, as set forth in Section 6 of the Agreement, and hereby represents and warrants that each and every one of such representations and warranties [is] true and correct in all material respects as of the date of this certification.
 "In witness whereof, Seller has caused this certificate to be executed and delivered as of the day and year first above written.
"SELLER:
 "GREEN SPRINGS VILLAGE, LTD., an Alabama limited partnership
 "By: CHAR-TER INVESTMENTS, an Alabama general partnership, as general partner
 "By:/s/ Carter L. Cooper
"Carter L. Cooper "General Partner
 "By:/s/ Charles Grelier
"Charles Grelier "General Partner"
On May 13, 1988, Associates filed this action, alleging that the defendants had fraudulently induced it to purchase the shopping center by misrepresenting or suppressing certain material facts concerning the economic stability of the shopping center, both orally, through Young during his initial negotiations with Morrow and Reiben and later through Cooper at the closing, and in the "Certificate" that was executed by Village at the closing. Apparently concluding that the "Certificate" did not incorporate any portion of the October 18, 1987, contract by reference, and that the purported oral assignment from Morrow, on behalf of Real Estate Management, to Associates was void under the Statute of Frauds, the trial court ruled that the representations contained in the October 18, 1987, contract had not been made to Associates and, therefore, that that portion of the October 18, 1987, contract containing the representations could not be admitted into evidence. As a result of this ruling, the trial court dismissed Associates' breach of contract claim. The trial court also ruled that Associates could not introduce into evidence any misrepresentations concerning the economic stability of the shopping center that may have been made to its promoters prior to the formation of Associates on November 10, 1987. Associates was allowed to proceed only on its fraud claims that were based on allegedly false oral representations that had been made by Cooper at the closing, and on the alleged suppression at the closing of certain facts concerning the economic stability of the *Page 875 
shopping center. The jury returned a verdict in favor of the defendants. Associates contends that the trial court erred to reversal in excluding part of its evidence, which, it says, constituted the "guts" of its case, and in dismissing its breach of contract claim. It argues that the trial court should have granted its motion for a new trial.
Initially, we note that the briefs of the parties are somewhat lengthy and that a great portion of them is devoted to issues that we need not or cannot address. For instance, as our following discussion will show, it is not necessary to consider whether the purported oral assignment to Associates was valid. Nor, in light of our holding, is it necessary for us to consider whether the trial court overstepped its bounds in making certain comments in the jury's presence during the trial. Also, because that portion of the record containing the transcript of the trial court's charge to the jury was not properly certified to us, the issue concerning the correctness of the trial court's jury instructions cannot be reviewed. We assume, however, that if this action is retried, the attorneys will work closely with the trial court to ensure that the jury is properly instructed as to the applicable law.
It appears to us that the dispositive issue on this appeal is whether that portion of the October 18, 1987, contract containing allegedly false representations was admissible into evidence for the purpose of proving a fraud or a breach of contract on the part of the defendants.[2] Associates argues, and we agree, that the contract was admissible because the December 17, 1987, "Certificate," which was executed by Village at the closing specifically for the benefit of Associates, incorporated the October 18, 1987, contract by reference. SeeNorville v. Lowenstein, 233 Ala. 249, 171 So. 357 (1936); BenCheeseman Realty Co. v. Thompson, 216 Ala. 9, 112 So. 151
(1927); Casey v. Holmes, Bott Earle, 10 Ala. 776 (1846). See, also, 17A Am.Jur.2d Contracts § 400 (1964) ("[w]here a written contract refers to another instrument and makes the terms and conditions of such other instrument a part of it, the two will be construed together as the agreement of the parties").[3]
Because the trial court erred in not admitting that portion of the October 18, 1987, contract sought to be admitted by Associates as bearing on its fraud and *Page 876 
breach of contract claims and erred in dismissing the breach of contract claim, the judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.
[1] First Stratford did not qualify to transact business in Alabama pursuant to Art. XII, § 232, Alabama Constitution of 1901, until December 18, 1987; however, that did not prevent Associates from becoming a legally formed Alabama limited partnership on November 10, 1987, the date the certificate of limited partnership was filed in the probate court in Jefferson County. See Ala. Code 1975, § 10-9A-20.
[2] The record indicates that the trial court, in response to the defendants' motion in limine, ruled that any oral representations that may have been made by the defendants during the negotiations preceding the execution of the October 18, 1987, contract, which were not included in that contract, were inadmissible. One of Associates' attorneys, in response to that ruling, stated that he had "no problem with that." See Vol. III, p. 80, of the court reporter's transcript. It does not appear to us that this ruling has been questioned on this appeal; consequently, we consider it to be the law of the case and, as such, to provide no basis for reversing the judgment. Furthermore, although Associates argues in its brief that the trial court erred in ruling that it could not introduce into evidence any oral misrepresentations concerning the economic stability of the shopping center that may have been made to its promoters prior to its formation on November 10, 1987, Associates did not allege that any oral misrepresentations were, in fact, made between the execution of the October 18, 1987, contract and Associates' formation on November 10, 1987. In any event, we note that under the rationale of WarwickDevelopment Co. v. GV Corp., 469 So.2d 1270 (Ala. 1985), a limited partnership is not precluded from maintaining an action for fraud on the ground that the alleged fraud was committed against its promoters prior to its formation.
[3] The defendants make much of the fact that the "Certificate" refers to a contract "dated October 18, 1987, by and between Seller and Purchaser," and that Associates is described in the "Certificate" as the "Purchaser." They point out that the purchaser of the shopping center, Associates, was not a party to the October 18, 1987, contract and they argue that parol evidence was not admissible to "contradict" the "Certificate." However, the record indicates that there was only one contract executed on October 18, 1987 — the one between Village and Morrow, on behalf of Real Estate Management. In any event, to the extent that the "Certificate" contains an ambiguity concerning the identity of the October 18, 1987, contract referred to therein, parol evidence is admissible, not to contradict the "Certificate," but to explain that the "Purchaser" under the October 18, 1987, contract, mistakenly referred to in the "Certificate" as Associates, was, in fact, Morrow, acting on behalf of Real Estate Management, one of the promoters of Associates. See Fouts v. Beall, 518 So.2d 1236
(Ala. 1987).