**BALDWIN COUNTY, ALA.,**
Plaintiff–Appellant,

v.

**PURCELL CORPORATION,**
Defendant–Appellee.

No. 91–7127.

United States Court of Appeals,
Eleventh Circuit.

Sept. 11, 1992.

Wilkins, Bankester & Biles, P.A., Bay Minette, Ala., Champ Lyons, Jr., Coale, Helmsing, Lyons, Sims & Leach, PC., Mobile, Ala., for plaintiff-appellant.

Frank McRight, Joseph F. Danner, Mobile, Ala., for defendant-appellee.

Before HATCHETT and BIRCH, Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

This controversy seeks determination of county or corporate ownership of Valentine Island in Baldwin County, Alabama. Based upon its interpretation and relation of two agreements, the district court granted the corporation's summary judgment motion, maintaining corporate ownership of the island. Although based on different reasoning, we affirm the district court's grant of summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant-appellee Purcell Corporation (Purcell), a Delaware corporation with its principal place of business in Bay St. Louis,

Mississippi, is the successor in title and interest to Lake Forest, Inc.,[1] which owned, developed, marketed and sold parcels of property in a subdivision known as Lake Forest in Baldwin County, Alabama. Lake Forest includes the subject Valentine Island, which is scenic, undeveloped marsh land jutting into the northeastern portion of Mobile Bay.[2] At all times relevant to this action, Lake Forest, Inc. and Purcell have been the record owners of and taxpayers for Valentine Island.

As Lake Forest was being developed, the issue of ongoing and escalating concern for the property owners was the county's acceptance for maintenance and actual maintenance of the roads in the subdivision. For Baldwin County to accept the subdivision roads, the county had to inspect, and often reinspect them before approval. After acceptance, the county then should have been responsible for maintaining the roads. Purcell has contended in this case that Baldwin County was extremely delayed in accepting the Lake Forest roads, and has never maintained them. Property owners pressed the county and Purcell for a resolution of the road issue because banks would not provide financing to homeowners unless the roads were accepted and maintained.

In early 1981, Artis James, president of Lake Forest, Inc., met with Jerry Boyington, at that time chairman of the Baldwin County Commission and the present county administrator, and Jeff Blood,[3] then the county development director, in an effort to resolve the road issue. The result of this meeting was the following February 3, 1981 letter agreement,[4] addressed to the Baldwin County Commission and signed by Artis James for Lake Forest, Inc.:

> This letter is to confirm to you that Lake Forest, Inc., has at all times planned to leave that property known as Valentine Island in its natural state or to otherwise dedicate it to use by the general public. It is our understanding that Baldwin County is now interested in obtaining Valentine Island for use as a wildlife area with only such improvements as are desireable [sic] for the environmental betterment of the area. Therefore, Lake Forest, Inc. *does hereby commit to deed* either directly or through an affiliate, Valentine Island to Baldwin County for such use with restrictions only that Valentine Island may not be developed for profit or sold to others. Lake Forest, Inc. shall reserve the oil, gas and minerals lying at least 500 feet below Valentine Island, but shall retain no surface rights including no rights to explore or drill for such oil, gas and minerals without the consent of Baldwin County.

> Further, Lake Forest, Inc. does hereby give Baldwin County the right to enter on and use Valentine Island immediately. Title, by deed from Lake Forest, Inc. or its affiliate shall be delivered no later than *February 1, 1982.* (emphasis added).

At his deposition, James explicitly stated his understanding of the consideration by Baldwin County for deeding Valentine Island to the county by Lake Forest, Inc.:

> Let me make this perfectly clear. The consideration of giving Valentine Island to this guy right here, Mr. Boyington, who is present with me, was for the acceptance and the maintenance of all roads within the Lake Forest subdivision, period. All paved roads; acceptance, maintenance, meaning that you maintained them.

R1–17–48 (Deposition of Artis James). James testified that the county's consideration for Valentine Island specifically was omitted from the letter agreement at the request of Boyington, who did not want the terms for deeding Valentine Island to be

---

1. Lake Forest, Inc. was a wholly owned subsidiary of Diamondhead Corporation.

2. Valentine Island consists of approximately 50 acres and is valued at $500,000.

3. Jeff Blood subsequently was killed in a car accident.

4. While the original February 3, 1981 letter agreement apparently has not been located in this litigation, the parties do not dispute the accuracy of the copy which has been produced.

public knowledge. James explained that the period of one year for deeding Valentine Island to the county was allotted to give the county sufficient time to accept all the existing paved roads in Lake Forest and to demonstrate maintenance, because previous promises to maintain the roads had proved unreliable.

Boyington conveyed a different understanding of the purpose of the February 3, 1981 letter agreement at his deposition and of the county's consideration for conveyance of Valentine Island. Boyington testified that Baldwin County was obligated to vacate two streets in Lake Forest before Valentine Island was to be conveyed to the county.[5] "If we did not agree to vacate those streets referred to as Van Buren or portions of them known as Van Buren and Jackson Streets, then there would have been no obligation to transfer Valentine Island to the county." R1–17–38–39 (Deposition of Jerry Boyington). Boyington also testified that "[w]e saw no particular reason to put any agreement of vacation in this particular letter that had not been a part of any agreement up to 3 February of 1981 between Purcell Corporation and Baldwin County Commission." Id. at 38. The vacation of the streets was formally accomplished by resolution of the Baldwin County Commission the afternoon of February 3, 1981. The resolution did not refer to Valentine Island. Nevertheless, Boyington testified that he understood the county commission's agreement to vacate portions of two streets located in Lake Forest to be the "only" consideration for the county's obtaining Valentine Island.[6] Id. at 56–57.

Boyington contends that all the existing paved roads in Lake Forest had been accepted for maintenance by Baldwin County

by October 1, 1980, and that, to his knowledge, they were being maintained. He testified that the letter agreement did not relate to the Lake Forest road system because "[t]here were no road considerations involved," that he did not "recall having discussed anything [regarding Lake Forest road maintenance] with Mr. James," and that he "would in no way negotiate or attempt to negotiate or would consider negotiating with any road in Lake Forest in return for Valentine Island...." Id. at 57, 59. Baldwin County's position, therefore, is that acceptance of the streets for maintenance in Lake Forest was not "whatsoever" consideration for the promise to convey Valentine Island. Id. at 78. Boyington claims that he did not learn that maintenance of the roads in Lake Forest was a condition for the conveyance of Valentine Island until 1982, and that this was a "totally new wrinkle" to the county. Id. at 84.

While the county accepted for maintenance most of the roads that were the subject of the 1981 letter agreement by 1982, James testified that no maintenance was performed by the county during that year. James explained that he took Boyington's word "that they [the county] were going to accept the roads for maintenance *and maintain those roads*, meaning their people and equipment and their labor. Otherwise, there would be no reason to convey Valentine Island." R1–17–72 (Deposition of Artis James) (emphasis added). As a result of this failure of consideration, Lake Forest, Inc. did not deed Valentine Island to Baldwin County before or on February 1, 1982.

Because the issue of road maintenance had not been resolved, the Lake Forest

---

**5.** Because of an improper plat, Lake Forest residents had built homes upon rights of way on portions of the two subject roads. Therefore, it was critical to the affected Lake Forest residents that these roads be vacated by the county.

**6.** In addition to the county's consideration of vacation of the designated streets for the conveyance of Valentine Island, Boyington stated that *the county wanted the island as a recreational or park area.* He explained that many residents of the former Lake Forest area, known as Park City, had purchased property there be-

cause of park areas which they understood to be permanent. When these park areas were replatted and sold as lots in the new Lake Forest subdivision, these previous residents were concerned and approached the county commission with this grievance. Consequently, Boyington stated that he, as the principal representative for the county, negotiated "to get Lake Forest, Incorporated to give the county Valentine Island as sort of a compensation for its loss of those people's parks that had been replatted." R1–17–43 (Deposition of Jerry Boyington).

Property Owners Association, Inc., in conjunction with Lake Forest, Inc., negotiated an agreement with the Baldwin County Commission that, for the payment of $200,000, the county would assume maintenance of the existing, paved roads in Lake Forest.[7] Dated April 15, 1986, the agreement is signed by the chairman of the Baldwin County Commission, the president of the Lake Forest Property Owners Association, Inc., and James as president of Lake Forest, Inc.[8] The agreement states in relevant part:

WHEREAS, there has been a dispute over who had the responsibility to maintain the existing paved roads, bridges, culverts, and right of way drainage associated therewith, all hereinafter collectively referred to as the "road system", and

WHEREAS, Baldwin County now maintains certain roads within the Lake Forest Subdivision, and

WHEREAS, Baldwin County has reached an Agreement with the Lake Forest Property Owners Association, Inc. and Lake Forest, Inc. to maintain additional roads within said Subdivision; and

WHEREAS, Lake Forest, Inc., the original developer of Lake Forest Subdivision, together with its parent company, PURCELL COMPANY, INC. (formerly Diamondhead), are to be released from all previous agreements, responsibilities and liabilities with Baldwin County and the State of Alabama Highway Department, relating to roads in the Lake Forest Subdivision, and including all liability on any bonds connected therewith, and

WHEREAS, Lake Forest Property Owners Association (hereafter "LFPOA"), for itself and Lake Forest, Inc./Purcell Company, Inc. are herewith paying Baldwin County (hereinafter "County") the sum of TWO HUNDRED THOUSAND DOLLARS ($200,000.00) to be used for improvement and maintenance of the surface of the roadways located in the Lake Forest Subdivision;

NOW, THEREFORE, in consideration of the premises, the mutual covenants contained herein, and the $200,000.00 consideration being paid to the Baldwin County Commission, all as hereinafter set forth, the parties hereto agree as follows:

1. MAINTENANCE OF ROAD SYSTEM: The Commission agrees to accept for maintenance and does hereby accept for maintenance all existing paved roads in the Lake Forest Subdivision. Baldwin County presently maintains approximately fifteen (15) miles of paved roads in said Subdivision. LFPOA shall maintain all of the planting, grass cutting and control of vegetation within the medians and rights of way of the roads in the Lake Forest Subdivision. The Commission further agrees to maintain the bridges, culverts, and right of way drains, which constitute a part of the road system.

. . . .

3. UPGRADING ROAD SYSTEM: LFPOA agrees to pay and does hereby tender and pay over to County the sum of TWO HUNDRED THOUSAND DOLLARS ($200,000.00) which sum has been acquired from Lake Forest, Inc./Purcell Company, Inc. This amount shall be the total amount to be paid to the County under this Agreement, and shall be used exclusively for the maintenance of the road system in Lake Forest Subdivision. The County agrees to place such money in a special interest-bearing account which will be used by the County solely for the purpose of fulfilling this Agreement. The County shall utilize such

---

7. The record is clear that Lake Forest, Inc. and the property owners were concerned with the county's maintenance of existing, paved roads, and not undeveloped roads. The record, however, is not definitive concerning whether the existing, paved roads increased between the 1981 and 1986 agreements.

8. Subsequent to the February 3, 1981 letter agreement, Lake Forest, Inc. conveyed all the land for the common amenities in Lake Forest to the Lake Forest Property Owners Association, Inc., which had become the moving force in contacting the Baldwin County Commission concerning road maintenance in the subdivision.

funds to promptly bring such road system up to County standards for similar road systems.

The agreement also contains the following release and merger provisions:

6. <u>RELEASES</u>: In consideration of the premises, the County, joined by the State of Alabama Highway Department, does hereby RELEASE Lake Forest, Inc. and Purcell Company, Inc. (formerly Diamondhead) from all previous agreements, contracts, obligations and bonds concerning or arising out of the Lake Forest Subdivision relating to the road system, the negotiations regarding same and the condition of the road system.

. . . .

8. <u>ENTIRE AGREEMENT</u>: *This Agreement embodies the entire Agreement of the parties and supersedes all previous agreements, contracts and understandings* between the County, Lake Forest, Inc., and Purcell Company, Inc. (formerly Diamondhead), *relating to roads in the Lake Forest Subdivision. No additional written or oral representations or agreements have been made by any party to this Agreement.* (emphasis added).

Purcell's position in this case is that the 1986 agreement documents that Baldwin County failed to maintain the roads in Lake Forest, or that the county did not provide its consideration for Lake Forest, Inc. to deed Valentine Island to the county, Purcell's view of the terms of the 1981 agreement.[9] Purcell also contends that the 1986 agreement released it from any obligation to convey Valentine Island to Baldwin County, which concurrently relinquished its claim to the island. In negotiating the 1986 agreement, James explained that

I wanted to make sure that I didn't spend two hundred thousand dollars and they turn around and want Valentine Island.

The language was put in to make certain that the letter [1981 agreement] or any conversation or anything we had to do with the roads in Lake Forest was wiped out by this agreement.

. . . . .

*Nobody in their right mind is going to pay two hundred thousand dollars and get somebody to come back and say we want Valentine Island too.*

R1–17–117, 120–21 (Deposition of Artis James).

Boyington testified that the 1981 letter agreement and the 1986 agreement were not related. In accordance with the 1981 letter agreement, he claims that the county had performed its obligation or consideration for the conveyance of Valentine Island by vacating the two requested streets. Because the county considers the conveyance of Valentine Island to have nothing to do with maintenance of the roads, the county's position is that Valentine Island belongs to Baldwin County. Boyington's understanding of the 1986 agreement is that Purcell paid $200,000 "to bring the roads in Lake Forest up to proper and acceptable standards of the county commission, in order to assume them for maintenance which would be provided with public funds...." R1–17–60 (Deposition of Jerry Boyington). Boyington testified that "[v]ery definitely" he disagreed with James's testimony concerning the agreements understood by both parties. *Id.* at 97. Similarly, Baldwin County states in its reply brief that "Purcell and Baldwin County cannot agree upon the consideration for an agreement between the parties in February of 1981 to

9. Jim Ivie, chairman of the roads and grounds committee for the Lake Forest Property Owners Association, represented the property owners in the negotiations with Purcell and Baldwin County for the 1986 agreement. At his deposition, he explained that the county had accepted for maintenance only 14 miles of road in Lake Forest, and that there were 51 miles of paved roads in the subdivision in 1985. Lenders were very concerned that no one party was responsible for maintaining the roads in Lake Forest,

and, until this was accomplished, they would withhold funding on mortgages. He explained that, in the 1986 agreement, Purcell agreed to pay $200,000 to bring the existing paved roads into compliance with the county specifications so that the county would accept them and be responsible for maintenance of the roads in Lake Forest. He testified that "at no time during these discussions [concerning the 1986 agreement] was [Valentine Island] mentioned." R1–20–21 (Deposition of Jim Ivie).

convey Valentine Island to the county." Reply Brief of Plaintiff–Appellant Baldwin County at 2.

Baldwin County originated this case as an action for specific performance of an agreement to convey real property in the Circuit Court of Baldwin County, Alabama. Based on diversity jurisdiction, Purcell removed the case to federal district court for the Southern District of Alabama. Subsequently, Purcell filed a motion for summary judgment, and Baldwin County filed a cross motion for summary judgment. The district court granted Purcell's summary judgment motion.

The district court recognized that Baldwin County and Purcell had different understandings of the consideration for the conveyance of Valentine Island in the 1981 agreement. The court, however, determined that through the release and merger provisions of the 1986 agreement, "[i]t was clearly the intent and legal effect of the document of April 15, 1986 to release Lake Forest from any obligation to deed Valentine Island to Baldwin County." R1-27-7. Baldwin County appealed the district court's grant of summary judgment to Purcell.

## II. ANALYSIS

A district court's granting summary judgment to a moving party is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.*" Fed.R.Civ.P. 56(c) (emphasis added). The movant "bears the initial responsibility of informing the district court of the basis for its motion" by identifying those portions of the record that demonstrate the absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient

evidence to rebut this showing with affidavits or other relevant and admissible evidence." *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see* Fed.R.Civ.P. 56(e). When the evidence presented by the nonmoving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted).

The Supreme Court has defined a factual dispute preventing summary judgment under Rule 56(c): "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." 477 U.S. at 247–48, 106 S.Ct. at 2510. Material facts, identified by the substantive law, are ones "that might affect the outcome of the suit under the governing law." 477 U.S. at 248, 106 S.Ct. at 2510. The Court has instructed, therefore, that the trial judge "must view the evidence presented through the prism of the substantive evidentiary burden," when deciding a summary judgment motion. 477 U.S. at 254, 106 S.Ct. at 2513. "Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

"Our review of a district court's grant of summary judgment is plenary; we will affirm the district court if, after construing the evidence in the light most favorable to the nonmoving party, we find that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Delancy v. St. Paul Fire & Marine Ins. Co.,* 947 F.2d 1536, 1544 (11th Cir.1991). "Although all justifiable inferences are to be drawn in

favor of the nonmoving party, *the moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing of an essential element of the case."* Manor Healthcare Corp. v. Lomelo, 929 F.2d 633, 636 (11th Cir.1991) (emphasis added). A federal court sitting in diversity jurisdiction applies the substantive law of the forum state, unless federal constitutional or statutory law is contrary. *Salve Regina College v. Russell,* — U.S. —, —, 111 S.Ct. 1217, 1218, 113 L.Ed.2d 190 (1991). Therefore, we must review this case anew to determine if any factual questions presented are genuine issues of material fact, analyzed under Alabama substantive law.

▇ This case involves the determination under Alabama law of whether Valentine Island should be conveyed to Baldwin County based upon certain agreements between the county and Purcell. "It has long been the law in Alabama (and indeed it is elementary) that the mutual assent of the parties to the same thing, and in the same sense, is an essential element to every contract." *In re Bd. of Comm'rs v. Jones,* 291 Ala. 371, 378, 281 So.2d 267, 273 (1973) (per curiam). Accordingly, any contract "requires consideration and a meeting of the minds regarding the subject matter." *Leisure Am. Resorts, Inc. v. Carbine Constr. Co.,* 577 So.2d 409, 411 (Ala.1990); *see Shirley v. Lin,* 548 So.2d 1329, 1332 (Ala.1989) (The essential elements of a contract are "an agreement, consideration, two or more contracting parties, a legal object, and capacity.").

The Alabama Supreme Court has recognized that " 'in the absence of mistake, fraud or ambiguity, the existence *vel non* of a contract, or as here, a promise made part of a contract, is determined by reference to the reasonable meaning of the parties' external and objective manifestations of mutual assent, *rather than by their uncommunicated beliefs.' "* Holland v. Continental Tel. Co.,* 492 So.2d 998, 1000

(Ala.1986) (emphasis added) (quoting *Mayo v. Andress,* 373 So.2d 620, 623–24 (Ala. 1979)). " 'Where there exists between the parties a written contract, the authorities are in agreement that parol evidence cannot be received to explain, contradict, vary, add to or take from its terms....' " *Farmers & Merchants Bank v. Home Ins. Co.,* 514 So.2d 825, 831 (Ala.1987) (quoting *Hartford Fire Ins. Co. v. Shapiro,* 270 Ala. 149, 153, 117 So.2d 348, 352 (1960)). Alabama courts have recognized that parol evidence is admissible *to explain,* but not *to contradict ambiguous terms,* and to show fraud or mistake. *Green Springs Assocs., Ltd. v. Green Springs Village, Ltd.,* 577 So.2d 872, 875 n. 3 (Ala.1991); *Brookins v. Greater Gadsden Hous. Auth.,* 588 So.2d 474, 476 (Ala.Civ.App. 1991); *Walker v. Traughber,* 351 So.2d 917, 920 (Ala.Civ.App.1977).

In this case, the parties admittedly dispute the consideration for the conveyance of Valentine Island as well as the relation and effect of the 1981 and 1986 agreements. The factual, consideration dispute goes to a material term of the 1981 agreement and an essential element of contract formation: the mutually agreed consideration for the conveyance of Valentine Island.

It is a well-settled general rule that consideration is an essential element of, and is necessary to the enforceability or validity of, a contract. It is generally stated that in order to constitute consideration for a promise, there must have been an act, a forbearance, a detriment, or a destruction of a legal right, or a return promise, bargained for and given in exchange for the promise.

*Kelsoe v. International Wood Prods., Inc.,* 588 So.2d 877, 878 (Ala.1991) (citations omitted). "A contract requires a meeting of the minds, and there is no evidence in this record of any such agreement" with respect to the 1981 agreement, the terms of which are unambiguous.[10] *Humber v.*

---

**10.** We additionally note that this case does not present a mutuality of mistake in contracting: Mutuality of mistake in relation to contracts means a common mistake. The parties meant or intended one thing but the contract

expresses another. This usually occurs in the drafting and execution of an instrument which does not truly express the agreement of the parties. The evidence produced by plaintiff is not that the parties reached an agree-

*B.F. Goodrich Co.*, 561 So.2d 511, 515 (Ala. 1990) (citation omitted); *see Webster v. Gunter*, 293 Ala. 282, 289, 302 So.2d 97, 103 (1974) (Jones, J., dissenting) ("An indispensable element of contract—a meeting of the minds—was there missing."). "[T]he evidence clearly shows that there was never a meeting of the minds of the parties as to all the essential elements involved in the contract and as to the respective rights and duties of the parties" regarding the consideration for the conveyance of Valentine Island in the 1981 agreement. *Southeastern Sand & Gravel Co. v. Newell Roadbuilders, Inc.*, 282 Ala. 431, 438, 212 So.2d 598, 604 (1968).

■ Moreover, the 1981 letter agreement, lacking consideration, is insufficient under the Alabama Statute of Frauds to convey an interest in land. In relevant part, the Alabama Statute of Frauds provides:

> In the following cases, *every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing* and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
>
> . . . .
>
> (5) *Every contract for the sale of lands,* tenements or hereditaments, *or of any interest therein,* except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller. . . .

Ala.Code § 8–9–2 (1975) (emphasis added). Accordingly, the Alabama Supreme Court has explained that a contract purporting to convey an interest in land is void and unenforceable without consideration stated in the written agreement.[11] *Foy v. Foy*, 484 So.2d 439, 442–43 (Ala.1986). To remove an oral agreement for the transfer of land from the Statute of Frauds, the Alabama Supreme Court has recognized "[t]he 'part performance' exception [which] requires the putative purchaser to (1) be in possession of the property, and (2) have paid all or part of the purchase price of the property." *Hunte v. Blake*, 476 So.2d 75, 77 (Ala.1985); *see also Bussey v. John Deere Co.*, 531 So.2d 860, 863 (Ala.1988) ("In order to take an otherwise valid oral contract out of the statute of frauds ..., the memorandums must state all essential elements over the signature of the party to be charged, including, but not limited to, *the element of consideration.*" (emphasis added)).

Clearly, these prerequisites for avoiding the operation of the Statute of Frauds did not occur in this case. Most notably, Purcell has continued to pay taxes on Valentine Island, signifying ownership. Purcell's 1981 agreement "was in effect nothing more than an agreement to make another agreement in the future dealing with the land." *Hunte*, 476 So.2d at 76. There has been no subsequent agreement specifically related to Purcell's conveyance of Valentine Island. The 1981 agreement, therefore, was void to convey an interest in property for lack of stated consideration, resulting in the parties being in the same position as if the contract had not been made.

■ Although the parties have shown starkly different understandings concerning the county's consideration for Purcell's conveyance of Valentine Island, these vary-

ment and the written contract expressed another, but rather that *the terms of the executed contract meant one thing in the mind of the seller and another in the mind of the buyer. That is not mutual mistake, but a failure to have a meeting of the minds resulting in an invalid contract.*
*Pirtle v. Harris*, 338 So.2d 1018, 1020–21 (Ala. Civ.App.1976) (emphasis added).

**11.** The basic elements for land conveyance in Alabama are the following:
A carefully drawn conveyance usually consists of the following parts: First the names of the parties ... A statement of the consideration and of its payment and receipt follows, and, after this comes the operative words of conveyance followed by a description of the land conveyed and any exceptions or reservations. *These elements constitute the 'premises'* which is followed by the 'habendum' ... which is usually introduced by the words "to have and to hold". . . .
*Wilkins v. Ferguson*, 294 Ala. 25, 29 n. 1, 310 So.2d 879, 883 n. 1 (1975) (Jones, J., concurring).

ing perceptions do not constitute genuine issues of material fact or preclude summary judgment under Alabama law. To comply with the Alabama Statute of Frauds as well as general contract law, the consideration for the conveyance of land must be stated within the written agreement. Parol evidence cannot supply the missing consideration. Even accepting the version of the consideration propounded by the nonmoving party, Baldwin County, is of no consequence. Because the consideration for the transfer of the ownership of the island is absent from the written 1981 letter agreement, it is irrelevant what the parties may *say* the consideration was for Purcell's conveyance of Valentine Island. Accordingly, there is no *legally significant factual issue* to be resolved by the trier of fact because the 1981 agreement is void for failure of consideration.

■ The 1981 agreement is the initial agreement in this controversy and the *only one* that specifically mentions the conveyance of Valentine Island. The 1986 agreement, which does not reference Valentine Island whatsoever, cannot revive or effectuate the void 1981 agreement. The 1986 agreement explicitly states that, for Purcell's consideration of paying $200,000 to effectuate compliance with the requisite standards for the roads in Lake Forest, the county thereafter will maintain those roads. The release and merger provisions clarify and emphasize that the agreement resolves all disagreements regarding the roads in Lake Forest.[12] The Alabama Supreme Court "has held that all prior negotiations are merged into a written contract that purports to cover an entire transaction" between the parties. *Smith v. Mid South Fiberglass, Inc.*, 531 So.2d 649, 651 (Ala.1988); see *Colafrancesco v. Crown Pontiac–GMC, Inc.*, 485 So.2d 1131, 1133 (Ala.1986) ("Merger clauses ... have been given effect in Alabama for years.").

The written 1981 agreement not only is a nullity, but also does not reference Lake Forest roads whatsoever.[13] The 1986 agreement stands alone as a valid contract, unrelated to the 1981 agreement.[14] Had the parties intended to include or accomplish the conveyance of Valentine Island in the 1986 agreement, they specifically could have so stated.

## III. CONCLUSION

The effect of determining the 1981 agreement to be void is to place the parties in their precontracting positions, or to retain Purcell's ownership of Valentine Island with no obligation to convey the island to Baldwin County. On these facts, the decision that the 1981 agreement is a nullity under Alabama law as well as the relation of the two agreements at issue in this case is purely a legal determination to be made by the court. The parties have not presented *genuine issues of material fact* to prevent granting summary judgment. Therefore, we AFFIRM the result of the district court's granting summary judgment to Purcell for the retention of its ownership of Valentine Island.

**12.** Apparently, the roads in Lake Forest are being maintained by Baldwin County pursuant to the 1986 agreement and Purcell's payment of the $200,000 consideration for this result under the terms of that agreement. Purcell has not complained to this court that the county's maintenance of the roads in Lake Forest has not occurred following the 1986 agreement.

**13.** The parties have attempted to relate the 1981 and 1986 agreements through their different understandings, each involving roads in Lake Forest, of the consideration for the 1981 agreement and the various references to "roads" and "road system" in the 1986 agreement. Irrespec-

tive of a potential determination by the trier of fact as to the definition of "roads" and "road system" in the 1986 agreement, there is no mention of roads whatsoever in the 1981 agreement. Therefore, parol evidence is unavailable to add this term to the written 1981 agreement.

**14.** We note that the parties have not questioned the *validity* of the 1986 agreement in this case. They merely have contested whether that agreement relates to and effectuates the 1981 letter agreement. In essence, Purcell raised the 1986 agreement as a defense to Baldwin County's suit claiming ownership of Valentine Island based on the 1981 letter agreement.