**Shakur Zaid ABDULLAH, Plaintiff,**

v.

**Carols MIGOYA et al., Defendants.**

**Case No. 12–22936–CIV.**

United States District Court, S.D. Florida.

June 28, 2013.

---

Shakur Zaid Abdullah, Miami, FL, pro se.

Ezra Saul Greenberg, Miami, FL, for Defendants.

### FINAL ORDER OF DISMISSAL

WILLIAM J. ZLOCH, District Judge.

THIS MATTER is before the Court upon the Report Of Magistrate Judge (DE 23) filed herein by United States Magistrate Judge Patrick A. White and upon Defendant Calixto Calderon's Motion To Dismiss (DE 12), which has been construed by the Court to be a Motion For Summary Judgment. The Court has conducted a *de novo* review of the entire record herein and is otherwise fully advised in the premises.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Objection To Report Of Magistrate Judge (DE 24) be and the same is hereby **OVERRULED;**

2. The Report Of Magistrate Judge (DE 23) filed herein by United States Magistrate Judge Patrick A. White be and the same is hereby approved, adopted and ratified by the Court;

3. Defendant Calixto Calderon's Motion To Dismiss (DE 12), which has been construed by the Court to be a Motion For Summary Judgment, be and the same is hereby **GRANTED** consistent with the terms set forth in Magistrate Judge White's Report (DE 23);

4. Plaintiff's Application To Proceed Without Prepayment Of Fees (DE 4) be and the same is hereby **DENIED;**

5. The above styled cause be and the same is hereby **DISMISSED** without prejudice, consistent with the terms set forth in Magistrate Judge White's Report (DE 23);

6. To the extent not otherwise disposed of herein, all pending motions are hereby **DENIED** as moot; and

7. If Plaintiff wishes to proceed with the claims raised in this lawsuit, he is required to initiate a new lawsuit, which would require submission of a new com-

plaint as well as payment of the full filing fee.

## REPORT OF MAGISTRATE JUDGE

PATRICK A. WHITE, United States Magistrate Judge.

### I. *Introduction*

On July 20, 2012,[1] Skakur Zaid Abdullah filed his fourth *pro se* civil rights action pursuant to 42 U.S.C. § 1983 in this Court. In the instant case he claims that the defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. *See* Complaint. (DE # 1). Plaintiff states that he suffers from various medical conditions, including AIDS and its related illnesses and cancer. He alleges that Dr. Calderon has denied him a special medical diet which had been ordered by a different physician, causing him to lose weight. Specifically, he alleges that he was prescribed a dialysis diet which consists of 60 gram/3000 calories. He also alleges that he was denied various medical tests and follow-up medical visits to medical specialists, such as, an immunologist, resulting in the worsening of his medical conditions. Plaintiff is seeking injunctive relief and compensatory damages. The plaintiff has sought leave to proceed *in forma pauperis*. (DE # 4).

Plaintiff named as defendants Carlos Migoya, Chief Executive of Jackson Health System; Rick Morse, Health administrator, Jackson Health System; Dr. Calixto Calderon, Medical Director of Corrections Health Services; and Marydell Guevara, Deputy Director of Miami–Dade County Corrections and Rehabilitation Department. The Complaint was initially screened pursuant to 28 U.S.C. § 1915. During such screening, it was discovered that Plaintiff was a multiple filer, having filed five civil rights complaints pursuant to 42 U.S.C. § 1983 in the Northern District of Florida, under multiple aliases, including Demetris Sutton, Demetrias, Demetris and Demetrius, and three prior § 1983 actions in this Court, under Abdullah.[2] *See* Report of Magistrate Judge entered on August 21, 2012. (DE # 8). It was determined that all of the prior cases met the criteria for a strike pursuant to 28 U.S.C. § 1915(g).[3] *Id.* at 4–8.

It could not be determined at the screening stage in this case, however, whether Plaintiff fell within the exception to the statute, imminent danger of serious physical injury at the time of filing the lawsuit. *See* 28 U.S.C. § 1915(g). It appeared that Plaintiff had raised sufficient facts to merit consideration of whether he was in imminent danger of serious physical injury. Accordingly, in a Report entered by the undersigned on August 21, 2012, it

---

1. Plaintiff's *pro se* complaint is deemed filed when he delivered it to prison officials for filing. *Garvey v. Vaughn,* 993 F.2d 776 (11th Cir.1993).

2. In one of his three earlier cases filed in this Court, Case No. 12–21401–Civ–Hoeveler, Plaintiff made allegations similar to the ones alleged in the instant case against defendant Guevara and a different defendant. The case was ultimately dismissed upon the defendants' motion with this Court finding that Plaintiff had filed three or more cases which fit the criteria of § 1915(g) and he did not satisfy the imminent danger of serious physi-

cal injury exception to the statute. *Id.* at DE # 19, 24, 30. Plaintiff's appeal to the Eleventh Circuit was dismissed for want of prosecution when he failed to pay the filing fee. *See Abdullah v. Guevera,* No. 13–10875–B (DE # 34).

3. An extensive review of Plaintiff's prior federal civil rights cases which were ultimately dismissed as frivolous, malicious, for failure to state a claim, or for failure to follow court orders can be found in Defendants Marydell Guevara and Debra Graham's Motion to Dismiss Plaintiff's Complaint filed in Case No. 12–21401–Civ–Hoeveler at DE # 19.

was recommended that service of process be ordered solely upon defendant Calderon and only as to the issue whether Plaintiff was in imminent danger at the time of filing this lawsuit. (DE # 8). It was further recommended that all other defendants be dismissed and a ruling on Plaintiff's motion to proceed *in forma pauperis* be deferred until such time it is determined whether Plaintiff came under the three-strike exception.[4] *Id.*

The Honorable William J. Zloch, United States District Judge, adopted the undersigned's report and the case was dismissed as to Defendants Migoya, Morse, and Guevara. (DE # 14). The case was to proceed as to Defendant Calderon on the imminent danger issue. *Id.* Service of process was accomplished upon Defendant Calderon and he has now filed a Motion to Dismiss with supporting affidavit and documentary exhibits. (DE # 12). Since the motion to dismiss is supported with documentation, the motion will be treated as a motion for summary judgment pursuant to *Fed.R.Civ.P.* 56. *See Fed. R.Civ.P.* 12(d). Plaintiff was advised of the applicable law pertaining to summary judgment motions and his right to respond to the motion. (DE # 13). The plaintiff has filed a responsive pleading with supporting documentation and his own affidavit, and the defendant has filed a reply. (DE # 16, 17, 18). After careful consideration, and for the reasons that follow, the motion to dismiss, treated as a motion for summary judgment, should be granted and the case dismissed without prejudice.

## II. *Summary Judgment Standard*

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Fed.R.Civ.P.* 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. That is, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (*quoting First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

It is well accepted that "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir.1998). However, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford,* 906 F.2d 667, 670 (11th Cir.1990). Accordingly, the nonmoving party, even if a *pro se* prisoner, cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that

---

4. It is noted that the order entered on April 17, 2012, granting Plaintiff's motion to proceed *in forma pauperis* (DE # 6) was entered in error and has now been vacated by separate order entered this date.

there are material issues of fact which require a trial. *Fed.R.Civ.P.* 56(e); *Coleman v. Smith,* 828 F.2d 714, 717 (11th Cir.1987); *Brown v. Shinbaum,* 828 F.2d 707 (11th Cir.1987).

If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. 2505; *Baldwin County, Alabama v. Purcell Corp.,* 971 F.2d 1558 (11th Cir.1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990)(*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. 2505). Of course, in making the determination whether genuine issues of material fact are present, the court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *see Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997), and "resolve all reasonable doubts about the facts in favor of the nonmovant." *See United of Omaha Life Ins. v. Sun Life Ins. Co.,* 894 F.2d 1555, 1558 (11th Cir.1990).

As indicated, Plaintiff has been advised regarding the requirements under *Fed. R.Civ.P.* 56 for a proper response to the defendant's motion for summary judgment and he has filed a pleading in opposition with supporting exhibits and his own affidavit. *See* DE # 16, 18.

## III. *Facts*

The undisputed facts, as revealed by thorough review of the record, are as follow.[5] When Plaintiff initiated the subject civil rights action, he was confined at Turner Guilford Knight Correctional Center ("TGK") in Miami, Florida, awaiting trial on two charges of third degree grand theft filed in Miami–Dade County Circuit Court Case Nos. F–11–032200 and F–11–032201. *See* Attachment A to Defendant's Motion to Dismiss. Soon after instituting the instant action, Plaintiff was convicted of the subject state criminal charges upon pleas of guilty. *Id.* He was sentenced to time served and was released from jail on September 10, 2012. *Id.* Three days after his release, he was arrested and confined at TGK, where he remains confined awaiting trial on the new criminal charge of third degree grand theft filed in Miami–Dade County Circuit Court Case No. F–12–023095. *See* Attachment B to Defendant's Motion to Dismiss.

Plaintiff suffers from various medical conditions, which include AIDS, seizures, hypertension and mental health problems. *See* Affidavit of Dr. Calixto Calderon at ¶ 5. While confined at TGK, he has received various different medications to treat his conditions. *Id. See also* Supporting Appendix at 10 to Attachment C. For example, he has received the medications Tenofovir, Lamivudine, Atazanavir, and Norvir to treat his AIDS. *Id.* He has received Bactrin and Zithromax as preventive medications to avoid opportunistic infections based upon Plaintiff's compromised immune system. *Id.* Plaintiff has also been prescribed Dilantin and Nexium

5. In support of his motion to dismiss, Defendant Calderon has submitted copies of Miami–Dade County Circuit Court records pertaining to Abdullah's state court criminal cases. *See* Attachments A and B; DE # 12–1, 12–2). He has also submitted his own sworn affidavit (Attachment C; DE # 12–3). At-

tached to Dr. Calderon's Affidavit is an Appendix, containing a summary prepared by Dr. Calderon of Plaintiff's extensive medical records as well as copies of medical records and Refusal of Treatment Forms. (Attachments D, E and F)(DE # 12–4, 12–5, 12–6).

to treat seizures and gastrointestinal distress, respectively. *Id.* And, he has received the medications Celexa, Abilify, and Benadryl for his mental health issues. *Id.*

From March 2011, well-before the filing of the instant action, and continuing to at least September 2012, Plaintiff has repeatedly refused to take his prescribed medications. *See* Affidavit of Dr. Calixto Calderon at ¶ 6, 8. *See also* Supporting Appendix at 1–7. Plaintiff has additionally refused to undergo medically necessary treatments, has refused to permit medically necessary laboratory tests, has refused physical examinations, refused sick calls, refused medically necessary surgery, refused to undergo x-rays, and has engaged in hunger strikes.[6] *Id.* at ¶¶ 9–11. *See also* Supporting Appendix at 1–5. He also refused intravenous fluids which were offered to provide him with additional calories and treat his dehydration. *See* Refusal of Treatment Form dated September 28, 2012. (DE # 12–5). Plaintiff further refused to attend appointments at the Special Immune Clinic, refused surgery, and refused to see specialized physicians. *Id.* *See also* Supporting Appendix at 6–7.

During his confinement at TGK, Plaintiff complained about the diet he was receiving to the state trial court judge presiding over his criminal cases. *See* Attachment A to Defendant's Motion to Dismiss. On January 18, 2012, the trial court judge conducted a hearing in Plaintiff's then-pending criminal cases into his complaints during which Dr. Calderon was called as a witness. *See* Affidavit of Dr. Calixto Cal-

deron at ¶ 12. Specifically, Plaintiff complained that he was not receiving a double tray of food. *Id.* Dr. Calderon testified at the hearing that Plaintiff was being provided an adequate diet but that he refused to eat. *Id.* The trial court judge ruled against Plaintiff and denied his request for a change of diet. *Id.* *See also* Attachment A to Defendant's Motion to Dismiss.

The 60 gram/3000 calorie diet sought by Plaintiff is a diet prescribed for those individuals suffering from renal failure and who were receiving dialysis treatment. *See* Affidavit of Dr. Calixto Calderon at ¶ 13. Plaintiff does not suffer from kidney problems in that his laboratory results indicate normal levels of sodium, potassium, creatinine, and blood urea nitrogen. *Id.* *See also* Supporting Appendix at 11, 13. A doctor, other than Dr. Calderon, had prescribed the dialysis diet for Plaintiff. *Id.* However, after reviewing Plaintiff's medical record, Dr. Calderon rescinded that diet. *Id.* Plaintiff subsequently received a low residue diet,[7] but such diet was discontinued in July 2012. *Id.* at ¶ 14. *See also* Supporting Appendix at 8. Plaintiff is currently receiving a soft diet without rice or vegetables. *Id.* at ¶ 15. *See also* Supporting Appendix at 8.

### IV. *Imminent Danger*

 Under the Prisoner Litigation Reform Act ("PLRA") prisoners are permitted to file only three meritless suits in the *in forma pauperis* status. 28 U.S.C. § 1915(g). Specifically, the "three strikes" provision of the PLRA provides:

---

6. For example, from May through July 2012, Plaintiff refused various forms of medical treatment on fourteen different occasions. *See* Supporting Appendix at Attachments E and F. (DE # 12–5).

7. The low residue diet is prescribed for irritable bowel syndrome, and has about 2600 to

2700 calories per day, if the inmate consumes all of the food items on the meal trays. *See Muhammad v. Davis,* 2013 WL 764761, *7, *12 (M.D.Fla.2013). A low residue diet "includes foods that are low in indigestible carbohydrates and connective tissues which reduce intestinal motility." *Id.* at *12.

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, *unless the prisoner is under imminent danger of serious physical injury.*

(emphasis added). *Id. See Brown v. Johnson,* 387 F.3d 1344, 1349 (11th Cir.2004) (*quoting* 28 U.S.C. § 1915(g)). The purpose of the PLRA is to conserve judicial resources by preventing meritless cases initiated by prisoners. *Vanderberg v. Donaldson,* 259 F.3d 1321, 1324 (11th Cir. 2001). Congress added § 1915(g) "to curtail abusive prisoner litigation." *Dupree v. Palmer,* 284 F.3d 1234, 1236 (11th Cir. 2002) (per curiam). "After the third meritless suit, the prisoner must pay the full filing fee at the time he initiates suit." *Vanderberg, supra.*

■ In this case, it is undisputed that Plaintiff qualifies as a three-striker under Section 1915(g). So, in order to bring his claims *in forma pauperis,* he must be "under imminent danger of serious physical injury," including at the time he filed his complaint. *See Medberry v. Butler,* 185 F.3d 1189, 1193 (11th Cir.1999). In determining whether a prisoner is in imminent danger, the Court looks to the prisoner's complaint "as a whole," construing it liberally and accepting his allegations as true. *Brown,* 387 F.3d at 1350 (in evaluating whether prison's failure to treat inmate with HIV placed him in imminent danger of serious injury, looking to the whole of his complaint by considering his allegations of current skin and vision problems as well as the "alleged danger of more serious afflictions" in the future).

■ A plaintiff must provide the court with specific allegations of present imminent danger indicating that a serious physical injury will result if his claims are not addressed. General assertions are insufficient. *See Skillern v. Paul,* 202 Fed.Appx. 343, 344 (11th Cir.2006)(finding where appellant merely alleged that he was not receiving his heart medication, without a description of his condition, and never alleged that he suffered any physical injury, the "imminent danger" exception was not met)(unpublished); *Brown v. Johnson,* 387 F.3d at 1349 (finding the imminent danger requirement met where prisoner alleged that a total withdrawal of treatment for HIV and Hepatitis, would cause severe complications, and increased susceptibility to various illnesses, and a rapid deterioration of his condition); *Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003)(a "general assertion is insufficient to invoke the exception to § 1915(g) absent specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"); *Johnson v. Warden,* 2006 WL 2348509, *2 (S.D.Ga. Aug. 11, 2006)(claims which included allegation that officials at Men's State Prison had not properly taken care of his needs regarding his diabetes did not satisfy imminent danger exception).

■ Moreover, a plaintiff must allege that he is currently in danger or that he expects the deprivation to continue causing him future danger. The law is clear that past harm does not satisfy § 1915(g)'s exception that a plaintiff be "under imminent danger of serious physical injury." *Brown,* 387 F.3d at 1349 ("a prisoner must allege a present imminent danger, as opposed to a past danger, to proceed under section 1915(g)...."); *Medberry,* 185 F.3d at 1193 ("a prisoner's allegation that he faced imminent danger sometime in the

past is ... insufficient"); *Abdul–Akbar v. McKelvie*, 239 F.3d 307, 315 (3d Cir.2001), *cert. denied*, 533 U.S. 953, 121 S.Ct. 2600, 150 L.Ed.2d 757 (2001)("By using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred.").

■ Thus, in order to satisfy the exception to § 1915(g), Plaintiff "must allege and provide specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury[.]" *Medberry v. Butler*, 185 F.3d at 1193 (holding that the three-strike prisoner was not "under imminent danger of serious physical injury" because the threat he alleged at Everglades Correctional Institution "had ceased prior to the filing of his Complaint"). *See also Jemison v. White*, 2011 WL 4832598, *2 (S.D.Ala.2011)(exception to § 1915(g) not satisfied where not clear from Plaintiff's Complaint whether he was receiving inadequate food trays at the time he filed the action, or whether he was continuing to receive inadequate meal trays, and where no allegations that Plaintiff was currently in danger or that he expected the deprivation to continue causing him future danger); *Ball v. Allen*, 2007 WL 484547, at *1 (S.D.Ala.2007)(holding that in order to satisfy the exception to § 1915(g), Plaintiff "must allege and provide specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury[.]") (citation and quotation marks omitted) (unpublished).

## V. *Analysis*

Defendant Calderon has filed a motion to dismiss the complaint, now treated as a motion for summary judgment, arguing that the materially undisputed record shows that at no point has Plaintiff been in imminent danger of serious physical injury, including the time that he filed the instant § 1983 complaint.[8] (DE # 12). In support of the motion, the defendant has submitted various documents consisting of state court records regarding Plaintiff's then-pending criminal cases and jail medical records, which have been fully reviewed as indicated above. The defendant has also submitted his own sworn affidavit with supporting Appendix of exhibits.

Dr. Calderon's supporting affidavit shows that he is employed as the Medical Director of Corrections Health Services in the Jackson Health System and he is a licensed medical doctor who has been practicing medicine for thirty-nine years. *See* Affidavit of Dr. Calixto Calderon at ¶¶ 1, 2. Before executing his affidavit, Affiant Calderon read the subject Complaint and personally reviewed Plaintiff's medical history and voluminous paper medical record. *Id.* at ¶ 3. Dr. Calderon states that Plaintiff does in fact suffer from AIDS and other serious medical conditions and that he has received medications to treat the various conditions. *Id.* at ¶¶ 5, 6. He further states that Plaintiff has consistently refused to take prescribed medications and refused to permit various forms of medical treatment which refusal was occurring at the time Plaintiff filed his complaint and continued until the date that the affidavit was executed. *Id.* at ¶¶ 1, 6, 8, 9, 10, 11. Dr. Calderon avers that he had "not cancelled any clinics or appointments that had been scheduled for Plaintiff." *Id.* at ¶ 9.

Regarding the 60 gram/3000 calorie diet sought by Plaintiff, Dr. Calderon explains

---

**8.** As pointed out by the defendant, his motion to dismiss is essentially a motion to deny Plaintiff *in forma pauperis* status, and not to dismiss the complaint on the merits.

that such a diet is prescribed for those individuals suffering from renal failure and who were receiving dialysis. *Id.* at ¶ 13. Dr. Calderon states that Plaintiff does not suffer from kidney problems in that his laboratory results indicate normal levels of sodium, potassium, creatinine, and blood urea nitrogen.[9] *Id.* Dr. Calderon acknowledges that Plaintiff had been prescribed the subject dialysis diet by a different physician when Plaintiff insisted that he receive such a diet. *Id.* Dr. Calderon states that after he reviewed Plaintiff's medical record, he decided to rescind the dialysis diet based on his medical judgment that it was not the proper diet for Plaintiff. *Id.* The affiant indicates that Plaintiff subsequently requested a low residue diet, but such diet was later discontinued upon Plaintiff's request in July 2012.[10] *Id.* at ¶ 14. Dr. Calderon states that Plaintiff is currently receiving a medically appropriate diet tailored to his particular medical and dietary needs.[11] *Id.* at ¶ 15. Specifically, Plaintiff is presently on a soft diet without rice or vegetables, a diet that he requested as a precondition to taking his medications.[12] *Id.*

> In summary the affiant avers:
> Plaintiff's medical condition has been stable since he was booked in late 2011.[13] His condition has not seriously deteriorated, nor has there been an imminent danger of serious deterioration at any time since he has been under the care of Corrections Health Services. At no point has Plaintiff been in imminent danger of serious physical injury. The greatest threat to Plaintiff's health has been his own refusal to cooperate with his medical treatment (by refusing medications, exams, and appointments) and his decision not to eat the food that is provided to him.

*Id.* at ¶ 16.

Plaintiff has filed responsive pleadings to the defendant's motion with attached copies of filed grievances, a copy of a letter sent to prison health services and his own affidavit. *See* DE # 16, 18. In his pleadings, he admits to engaging in hunger strikes, asserting that he did not eat the food given in that the diet he is receiving is not the proper diet for his medical conditions.[14] He also admits refusing prescribed medications, asserting that those medications cause him to suffer with adverse side-effects. His attached grievances indicate that he has frequently challenged the medical treatment received at TGK and sought additional forms of medical treatment and testing, such as counseling.

Review of the record unequivocally demonstrates that Defendant Calderon revised Plaintiff's diet in that he was no longer provided the dialysis diet. However, it is

---

9. *See also* Supporting Appendix at 11, 13.

10. *See also* Supporting Appendix at 8.

11. *See also* Supporting Appendix at 8.

12. *See also* Supporting Appendix at 8.

13. Defendant Calderon mistakenly stated in his affidavit that Plaintiff was last booked into TGK on December 14, 2011. *See* Affidavit of Dr. Calixto Calderon at ¶ 4. The defendant explains in his motion to dismiss that "[g]iven Plaintiff's very brief stint as a private citizen, it appears that Dr. Calderon was understandably unaware that Plaintiff ever left TGKCC."

*See* Defendant Calixto Calderon's Motion to Dismiss Plaintiff's Complaint at 2 n. 2. (DE # 12).

14. It appears that Plaintiff is now also alleging that he is unlawfully being denied the religious diet of his faith, Islam. *See* DE # 16 at 2. If so, that claim is not properly before the Court in this case and would require the filing of a separate § 1983 action, raising such a claim. For any such new § 1983 action, Plaintiff must pay the full filing fee when filing his Complaint.

just as clear, that an alternate diet was provided to Plaintiff and the diet was medically appropriate for Plaintiff's various medical conditions. If Plaintiff lost weight it was because he chose at times not to eat the food provided and, on occasion, elected to engage in hunger strikes. Plaintiff maintains, however, that he did request the dietary supplement Ensure but never received it, while the defendant indicates that Ensure was provided, but it was Plaintiff who refused the supplement.[15] While certainly a disputed factual issue, such factual dispute is not material here. The record does indicate that medical staff was concerned about Plaintiff's weight loss and dehydration and attempted to administer intravenous fluids to control his lack of calories and dehydration, but Plaintiff refused such treatment. Also, Plaintiff was provided and offered various forms of medical treatment. He frequently refused treatment even when advised of the dangers of doing so, such as death and pain. For example, Plaintiff refused to undergo laboratory tests on July 19, 2012, and surgery on April 3, 2012. It is important to note that Plaintiff refused an appointment with radiology for a CT scan, a diagnostic test he alleges in his complaint that had been ordered and never provided. He additionally refused to take his medications on July 9, 14, 15, 19, and 20, 2012. And, even with Plaintiff's clear disregard of his medical needs, at the time he filed this lawsuit his condition was stable; he was not in any imminent danger due the actions of Doctor Calderon or any other corrections personnel.

Thus, if Plaintiff's weight loss is a health issue, as he alleges in his Complaint, it is because of his own behavior. And, if his various medical conditions are deteriorating, as he alleges, it is similarly because he refuses to accept the comprehensive medical treatment offered him by Dr. Calderon and the medical staff at TGK. As aptly pointed out by the defendant, if Plaintiff's life was in any danger at the time he filed the instant Complaint, it was due to his own actions and reckless conduct, not the actions or inaction of Defendant Calderon.

 In conclusion, the undersigned finds that based upon the record, the Plaintiff has failed to present any evidence to support his allegation that he is in imminent danger of serious physical injury entitling him to invoke the exception provided for in 28 U.S.C. § 1915(g). In contrast, the defendant has met his evidentiary burden. No genuine issue of material fact remains regarding Plaintiff's ability to proceed *in forma pauperis*. Based upon the finding that he cannot proceed *in forma pauperis,* the complaint in this case should be dismissed, because he did not pay the filing fee when he filed his Complaint. Consequently, the motion for summary judgment filed by the defendant should be granted in that the pleadings, together with the affidavit, and documentary exhibits, show that the defendant is entitled to the relief he seeks, dismissal of the subject complaint. *See generally Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

It is pointed out that review of Plaintiff's pleadings with supporting exhibits and affidavit reveal that he is clearly claiming that the defendant was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. While Plaintiff should not be excused from the three-strike provision of the PLRA since he cannot demonstrate imminent danger, requiring dismissal of this case, the dismissal of this case is to be without prejudice. Thus, no ruling as to the merits of his claim is now being made. In the

**15.** *See* Supporting Appendix at 2 to Dr. Calderon's Affidavit (DE # 12–4).

event Plaintiff wishes to proceed with his claims against Defendant Calderon, he may initiate a new lawsuit by filing a new complaint and paying the full filing fee. *See Dupree v. Palmer,* 284 F.3d 1234, 1236 (11th Cir.2002)(per curiam)(holding that proper procedure is to dismiss complaint without prejudice when district court denies prisoner leave to proceed in forma pauperis under three strikes provision of PLRA, rather than to allow prisoner to pay full filing fee after being denied in forma pauperis status, as fee must be paid at time suit is initiated).

VI. *Recommendations*

Based upon the foregoing, it is recommended that: (1) Defendant Calderon's Motion to Dismiss, construed as a motion for summary judgment (DE # 12), be **GRANTED** and this case be dismissed without prejudice; (2) Plaintiff's request to proceed *in forma pauperis* (DE # 4) be **DENIED;** (3) if Plaintiff wishes to proceed with the claims raised in this lawsuit, he be required to initiate a new lawsuit, which would require submission of a new complaint as well payment of the full filing fee; and (4) this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 23rd day of May, 2013.